# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 9:17-cv-80103-ROSENBERG/HOPKINS

PATRICIA KENNEDY,

    Plaintiff,

v.

OMEGAGAS & OIL LLC,
a Florida limited liability company,

    Defendant.

_____/

## **MEMORANDUM OPINION**

**THIS CAUSE** is before the Court following the non-jury trial held on October 20, 2017. This case arises from Plaintiff Patricia Kennedy's January 14, 2017 visit to Defendant Omegagas & Oil LLC's gas station at 1974 South Congress Avenue, West Palm Beach, FL. During her visit, Ms. Kennedy, who is in a wheelchair, alleges that she was denied the full and equal enjoyment of the gas station because of violations of the American Disabilities Act ("ADA") throughout the store. The Defendant responds that this case is largely moot because the ADA violations have been remedied and that remedying the one violation that remains—insufficient maneuvering space in the bathroom—is not readily achievable. *See* DE 67-1, Pre-Trial Stipulation, at 2.

## I. INTRODUCTION

The Court first summarizes the background facts before delineating the specific factual findings of the Court.

### A. The Parties

Ms. Kennedy is a disabled individual who lives in Tamarac, FL. Trial Tran. 7:11–23. She is generally confined to a wheelchair. *Id.* at 7:13–8:4. Omegagas & Oil is the company that owns the gas station at 1974 South Congress Avenue and Mr. Walid Alsheikh is the managing member of Omegagas & Oil. *Id.* at 98:14–20.

### B. The Trial

#### 1. Undisputed Facts

It is undisputed that Ms. Kennedy is a person with a disability and that Defendant owns and operates the gas station at 1979 South Congress Avenue. DE 67-1, Pre-Trial Stipulation, at 5. It is also undisputed that the gas station is a place of public accommodation and that, at the commencement of this lawsuit, some aspects of the Defendant's property did not comply with the ADA. *Id.*

#### 2. Lay Testimony

##### a. Patricia Kennedy for the Plaintiff

Ms. Kennedy testified that she is in a wheelchair due to her "c5-6 incomplete" disability. Trial Tran. at 7:13–17. Ms. Kennedy's disability gives her limited use of her right side; although she can walk a few steps if she is holding on to something, she is generally confined to a wheelchair. *Id.* at 7:20–8:4. Ms. Kennedy is familiar with the Americans with Disabilities Act and has been involved in ADA advocacy for approximately twenty years. *Id.* at 8:5–14. Ms. Kennedy is often in Palm Beach County as she frequently travels around Florida. *Id.* at 18–20.

On January 14, 2017, Ms. Kennedy visited the gas station at 1974 South Congress Avenue. *Id.* at 8:24–9:20. On her visit to the store, Ms. Kennedy noted that the handicap parking space was faded, *id.* at 11:4–10, and that the handicap parking sign was faded and blocked from

sight, *id.* at 12:12–18. *See* Pl.'s Ex. 3 & 4. She also noted that there were obstructions, including a dumpster and boxes, in the access aisle next to the parking space; Ms. Kennedy needs the access aisle to be clear so that she can get in and out of her van using its lift. Trial Tran. at 11:4–13.

Ms. Kennedy testified about her observations of the ADA violations in the bathroom at the gas station. She could not enter the bathroom in her wheelchair but looked inside. *Id.* at 33:6–10. There was a mop bucket in the bathroom, which could prevent her from getting close enough to the toilet to transfer from her wheelchair. *Id.* at 16:12–17:8; Pl.'s Ex. 12. The bathroom also had a pedestal sink which could prevent her from getting close enough to the sink without her feet running into the pedestal. Trial Tran. at 17:20–24; Pl.'s Ex. 13. The sink also had knobs that required a grip which she could not turn even if she could have gotten close enough to the sink. Trial Tran. at 18:2–5; Pl.'s Ex. 17. The toilet had its flush control on the inside of the toilet, next to the wall. Trial Tran. at 19:13–15; Pl.'s Ex. 7. The toilet did not have a rear grab bar, Trial Tran. at 19:13–15; Pl.'s Ex. 7, and the side grab bar was too short, only 37 inches, Trial Tran. at 20:5–7. Pl.'s Ex. 18. The door to the bathroom had a doorknob that required the ability to grip to be able to open. Trial Tran. at 20:13–21:1; Pl.'s Ex. 9. The paper towel dispenser in the bathroom was too high for Ms. Kennedy to be able to reach. Trial Tran. at 21:19–24; Pl.'s Ex. 16.

Ms. Kennedy visited the gas station for a second time on July 18, 2017, which was after this lawsuit was filed. Trial Tran. at 23:23–24:3; Pl.'s Ex. 34. During her return visit, Ms. Kennedy again noticed ADA violations at the gas station. The lines designating the handicap parking space were faded, the access aisle was not clearly marked, and there was a chair in the access aisle. Trial Tran. at 25:1–15; Pl.'s Ex. 33.

### b. Deposition of Walid Alsheikh for the Plaintiff

During his May 30, 2017 deposition, Mr. Alsheikh testified that he is the owner and manager of the gas station at 1974 South Congress Avenue, which he acquired in 2002. DE 86 at 6:23–7:9.[1] The gas station has two tenants: an auto repair shop, Best Brakes, and a tire shop, Guajiro Tires. *Id.* at 12:6–15. Mr. Alsheikh testified that he did not perform any due diligence prior to acquiring the property. *Id.* at 15:15–19. With the exception of replacing existing fuel tanks, Mr. Alsheikh has not made any improvements to the property since he bought it. *Id.* at 17:1–13.

Mr. Alsheikh testified that he made some changes to the property when the lawsuit was filed and he found out that his store was not in compliance. *Id.* at 17:23–18:7. He did not, however, hire an ADA expert to ensure that the changes he was making were in compliance with the ADA. *Id.* at 20:6–9. Mr. Alsheikh installed new grab bars because one was missing and because the other one was not the right length. *Id.* at 26:6–24. He replaced the faucet handle because he found out that his old faucet handle was not in compliance with the ADA according to the report he received as part of the lawsuit. *Id.* at 28:2–9. He replaced the toilet because the handle was on the wrong side, *id.* at 29:8–13, and installed a new door handle, *id.* at 30:29:25–2, 25:6–10. He also installed a new handicap sign for the bathroom, *id.* at 30:18–25, and for the parking space, *id.* at 31:8–14. Mr. Alsheikh installed a new paper towel dispenser, *id.* at 32:11–16, 33:15–17, and installed a new sink, *id.* at 34:5–14. He did not do anything to change the size of the bathroom. *Id.* at 41:15–17.

---

[1] The citations correspond to the deposition transcript page numbers.

### c. **Walid Alsheikh for the Defendant**

Mr. Alsheikh testified that he the managing member of the gas station. Trial Tran. at 98:15–17. He has a bachelor's degree from the University of Jordan in Amman, Jordan and an MBA from the University of New Mexico. *Id.* at 99:23–100:7. Mr. Alsheikh runs the day-to-day operation of the gas station, *id.* at 98:19–20, and has authority to make and enforce policies and procedures at the gas station, *id.* at 99:10–12. There are two tenants at the gas station, a tire shop and an auto repair shop. *Id.* at 99:14–15. Mr. Alsheikh could terminate the leases at any time with notice. *Id.* at 99:19–22.

Prior to this lawsuit, Mr. Alsheikh thought that the property was in compliance with the ADA because he has owned the property for 15 years and has never received any complaints; the gas station also gets inspected annually by the State of Florida as part of its license for the lottery and Mr. Alsheikh had never been informed that the property was not in compliance. *Id.* at 101:24–102:10.

After receiving the Complaint, Mr. Alsheikh obtained a copy of the ADA statute and began fixing what he could. *Id.* at 102:18–21. He did some of the work himself and hired a handyman and plumber to complete some of the work. *Id.* at 102:25–103:9.

When Plaintiff's expert, Mr. Herrera, came to inspect the property in March 20, 2017, Mr. Alsheikh was still making changes to the property. *Id.* at 104:3–8. With respect to the handicap parking space, he moved the spot because he noticed that the garbage truck left the dumpster in the original handicap parking space. *Id.* at 105:1–5. Mr. Alsheikh told his tenants that they cannot use the handicap parking space and stated that "I know still some people use it, and I have to enforce the policy on it." *Id.* at 105:7–8. He stated that the managers are now

5

required to immediately remove anything from the spot if they see people place anything in it. *Id.* at 106:2–12.

Mr. Alsheikh testified about the steps he has taken to remedy the ADA violations identified in Mr. Herrera's report. To remedy the issue with the handicap bathroom sign, Mr. Alsheikh placed three signs on the door—one of the latch side as required in the report and one on the hinge side, in addition to the one on the door. *Id.* at 111:2–14; Def.'s Ex. 7, 8, 9, 10, 11. With respect to the maneuvering clearance, Mr. Alsheikh testified that he removed the door closer, as there does not need to be 12-inches of maneuvering space if there is no door closer. Trial Tan. at 115:20–116:2. He bought a new toilet with the flush on the open side. *Id.* at 116:3–11; Def.'s Ex. 13. He moved the toilet so that the center is the appropriate distance from the wall. *Id.* at 117:15–118:2; Def.'s Ex. 14. Mr. Alsheikh installed a new paper towel dispenser that is at the appropriate height. Trial Tran. at 120:8–10; Def.'s Ex. 16 & 17. He moved the sink down one inch to make it compliant with the required height. Trial Tran. at 122:12–14; Def.'s Ex. 18. He also installed a rear grab bar and a new side grab bar that is the required length. Trial Tran. at 124:8–20. Mr. Alsheikh replaced the hardware on the bathroom door, Trial Tran. at 125:21–24, and the faucet on the sink, *id.* at 126:1–5. He threw away the old toilet, paper towel dispenser, and hardware. *Id.* at 132:21–133:11.

Mr. Alsheikh testified about changes he would have to make to the bathroom for it to have the required 60-inches of maneuvering space. He contacted two contractors to give estimates for how much it would cost to reconfigure the bathroom and received estimates of $80,000 and $85,000. Trial Tran. at 119:7–16. He would also have to close the store during construction because the wall that would need to be moved contains electrical lines and

plumbing. *Id.* at 119:19–25. The contractors only suggested that he move the wall; they did not offer any other solutions for how to make the bathroom compliant. *Id.* at 136:13–16.

Mr. Alsheikh never hired an ADA expert to determine whether or not the gas station was compliant. *Id.* at 133:22–24. He used Mr. Herrera's report to remedy the ADA violations, *id.* at 134:8–9, and also looked at the ADA standards online, *id.* at 135:14–17.

### d. Patricia Kennedy for the Defendant

Patricia Kennedy's interrogatory answers were read into the record. She stated that there was an unsecured floor mat that made it difficult for her to enter with a wheelchair, that the flush control was on the wrong side, the doorknob made it difficult for her to enter, the restroom was cluttered with obstructions, and that she could not use the sink because it was a pedestal sink and had knobs that she could not use. *Id.* at 145:5–15.

### 3. Expert Testimony

### a. Carlos Herrera for the Plaintiff

Mr. Herrera conducts ADA handicap inspections and construction inspections to ensure ADA compliance. *Id.* at 44:24–25. He has a bachelor's degree in civil engineering, a Florida general contractor's license, and a certification for accessibility and plan review. *Id.* at 44:15–19. During his career, he has conducted between 300 and 400 ADA inspections. *Id.* at 45:1–3.

On March 20, 2017, Mr. Herrera conducted an ADA inspection at the gas station. *Id.* at 45:23–46:4. During his visit, Mr. Herrera noted that there was furniture in the handicap parking space. *Id.* at 49:12–20. He testified that the wording of the handicap parking sign was in compliance with the ADA. *Id.* at 67:12–20.

Mr. Herrera noted several problems with the bathroom. The sign was mounted on the door, whereas the ADA requires that it be on the latch side of the door between 48 to 60 inches

7

above the ground. *Id.* at 49:22–24. The door to the restroom did not have sufficient maneuvering clearance. The ADA requires twelve inches of maneuvering clearance so that there is enough space for a person who approaches the door to grab the latch and pull the door open; there were only six and a quarter inches of maneuvering clearance at the bathroom door at the gas station. *Id.* at 50:3–12. The flush control on the toilet was on top of the toilet, whereas the ADA only allows for it to be on the open side of the toilet. *Id.* at 50:14–21; Pl.'s Ex. 23. The toilet was not the appropriate distance from the wall. Trial Tran. at 51:20–52:20. The bathroom did not have the required 60 inches of clear floor space to allow for a wheelchair to turn around. *Id.* at 52:24–53:21. The amount of space did not comply with either the circle or t-shape methods of providing sufficient clear floor space. Under the circle method, there must be a five-foot radius in all directions; under the t-shape, there must be four-feet of clear space in one direct and three-feet in another direction. *Id.* at 53:19–21. The sink was one inch higher than allowed under the ADA. *Id.* at 54:18–55:19.

Mr. Herrera testified to cost estimates to remedy the ADA violations. There would be no cost to remove the furniture in the parking space; it would cost $25 to replace and relocate the sign on the door of the restroom; $900 to remedy the issue of the maneuvering space on the push side of the door; $900 to relocate the water closet; $4,650 to remedy the lack of maneuvering space inside of the restroom; $150 to lower the hand dryer; and $450 to relocate the sink. *Id.* at 60:4–11.

Mr. Herrera testified that the $4,650 estimate to remedy the lack of maneuvering space in the restroom is an estimate for moving a plumbing wall and a partition wall and for new flooring and new ceiling. *Id.* at 60:22–25. He assumed that the partition separating wall was a simple separating wall. *Id.* at 69:6–11. Mr. Herrera did not do any analysis of the plumbing or electrical

8

systems in the building. *Id.* at 69:17–18. The estimate was not specific to this property but was an average based on other sites. *Id.* at 70:10–14. Mr. Herrera did not determine if the recommendations were readily achievable. *Id.* at 70:23–71:7. A readily achievable inspection requires analyzing the structure of the building, the plumbing, whether a wall is load bearing, and the effect that remedying the violations would have on the operation of the business. *Id.* at 70:25–71:25.

### b. Mark Shehadeh for the Defendant

Mr. Shehadeh testified that he is the owner of Build Masters, a general contractors business and that he is a licensed general contractor. *Id.* at 77:8–21. In April of 2017, Mr. Alsheikh contacted Mr. Shehadeh to get an estimate of the cost to bring the gas station into compliance with the ADA. *Id.* at 79:3–7. Specifically, Mr. Shehadeh gave an estimate of how much it would cost to make the bathroom ADA compliant by widening it. *Id.* at 79:14–25. He estimated it would cost $85,950.00 to make the bathroom compliant. *Id.* at 82:15–18; Def.'s Ex. 19.

Mr. Shehadeh testified that he did not know what a t-shape is as it relates to maneuvering space for ADA compliance. *Id.* at 85:2–5. He stated that the 5-foot clearance space had to be in a circle. *Id.* at 85:8–16.

### c. Vincent Soreno for the Defendant

Mr. Soreno is one of the managers of All County Contractors, which is a licensed general contracting company. *Id.* at 88:10–17. In May, 2017, All County Contractors was contacted to provide an estimate for how much it would cost to make the bathroom ADA-compliant. *Id.* at 89:18–24. Moving the wall to make the bathroom wider would have involved moving plumbing and electric. *Id.* at 90:9–14. He prepared a proposal and explained that the project would require

9

an engineer. *Id.* at 90:16–21. He estimated that it would cost $80,000.00 to make the bathroom handicap accessible. *Id.* at 92:21–22; Def.'s Ex. 20. Mr. Soreno also looked around the gas station to see if the bathroom could be relocated but concluded that there was no other place to put it. Trial Tran. at 92:14–17.

Mr. Soreno testified that he does not know about the various ADA standards. *Id.* at 97:2–9. He knows that an ADA bathroom has to have a circular radius of 5-feet and that he does not know any other configuration that is ADA-compliant. *Id.* at 97:8–15. He did not consider whether there might be other alternatives to making the bathroom ADA compliant other than moving the wall. *Id.* at 97:17–20.

## II.  FINDINGS OF FACT & CONCLUSIONS OF LAW

### A.  <u>Legal Conclusions</u>

Title III of the Americans with Disabilities Act prohibits discrimination by public accommodations, prescribing that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a). A public accommodation is defined as a private entity whose operations affect commerce, and which falls within one of 12 enumerated categories, including a "gas station . . . or other sales or rental establishment," 42 U.S.C. § 12181(E)(6). Congress delegated to the Department of Justice the authority to enforce the ADA and promulgate regulations under Title III, 42 U.S.C. §§ 12186(b), 12188(b), 12206. Pursuant to that authority, the DOJ adopted the 2004 ADA Accessibility Guidelines of the Unites States Access Board (the "ADAAG"), and the 2010 ADA Standards For Accessible Design ("2010 ADA Standards"). The 2010 ADA

Standards replaced the ADAAGs in 2012. With minor differences, the two standards are substantially similar as they apply to the conditions at issue herein.

Mootness

Because Article III courts are limited to resolving cases and controversies, mootness strips a court of jurisdiction. *See Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993). A defendant's voluntary cessation of an illegal practice does not automatically render a case moot. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Rather, "the standard . . . for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (citation omitted). In *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173 (11th Cir. 2007), the Eleventh Circuit considered three factors in determining whether the defendant's voluntary cessation mooted the claims: (1) whether the behavior was an isolated incident or was a continuing practice or deliberate, (2) whether the cessation was "motivated by a defendant's genuine change of heart rather than his desire to avoid liability," and (3) whether a defendant failed to acknowledge wrongdoing. 505 F.3d at 1186–87.

However, "ADA-architectural-barrier cases are a unique subset of voluntary cessation-doctrine cases." *Houston v. 7-Eleven, Inc.*, 2014 WL 351970, at *2 (S.D. Fla. Jan. 31, 2014). "Several courts have found that where structural modifications have been undertaken to make the facility ADA compliant the case is moot. The fundamental rationale supporting these cases is that the alleged discrimination cannot reasonably be expected to recur since structural modifications permanently undo the offending conduct." *Id.*

### Removal of Barriers Where Readily Achievable

In existing structures, barriers only need to be removed "where said removal is readily achievable." *Ass'n for Disabled Ams., Inc. v. Key Largo Bay Beach, LLC*, 407 F. Supp. 2d 1321, 1328–1329 (S.D. Fla. 2005). "The ADA defines 'readily available' as 'easily accomplishable and able to be carried out without much difficulty or expense.'" *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1273 (11th Cir. 2006) (quoting 42 U.S.C. § 12181(9)). "[T]he plaintiff has the initial burden of production to show (1) that an architectural barrier exists; and (2) that the proposed method of architectural barrier removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense under the particular circumstances of the case." *Id.* (quoting *Colorado Cross Disability Coal. v. Hermanson Family Ltd. P'ship I,* 264 F.3d 999, 1007 (10th Cir. 2001)). "A plaintiff must present sufficient evidence so that a defendant can evaluate the proposed solution to a barrier, the difficulty of accomplishing it, the cost implementation, and the economic operation of the facility." *Id.* at 1274. In *Gathright-Dietrich*, the Court found that the ADA plaintiffs failed to meet their burden of production to show that the barrier removal was readily achievable where the plaintiffs' proposals did not provide any detailed cost analysis and did not address the engineering and structural concerns associated with the proposal. *Id.*

"When plaintiffs meet the burden of production showing that the removal of barriers is 'readily achievable,' the burden then shifts to the defendant to prove the affirmative defense that the removal of a barrier is not readily achievable." *Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 417 (11th Cir. 2011). The factors to be considered in evaluating whether removal of a barrier is "readily achievable" are:

> (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on

expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity; and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

*Gathright-Dietrich*, 452 F.3d at 1273 (citing 42 U.S.C. § 12181(9)).

### B.  The Parties' Theories of the Case

Ms. Kennedy argues that, even if Defendant has remedied the other violations of the ADA, Defendant has done nothing to address the lack of sufficient floor space in the bathroom. Additionally, Defendant has ignored the ADA for years and allowed the ADA violations to persist. Thus, an injunction is necessary to ensure compliance and continued compliance. DE 67-1, Pre-Trial Stipulation, at 2.

Defendant states that it has fixed all of the ADA violations that were readily achievable. Although it admits that it has not remedied the limited floor space in the bathroom, it argues that remedying this violation is not readily achievable because it would require major construction. Defendant also argues that Plaintiff has not met its burden of production to show that removal of this barrier is readily achievable. *Id.* at 2–3.

### C.  The Court's Findings

The Court concludes that most of Ms. Kennedy's claims have been rendered moot by Mr. Alsheikh's remediation and that Ms. Kennedy failed to meet her burden with respect to the one remaining violation, the limited maneuvering space in the bathroom.

<u>Mootness</u>

With the exception of the limited maneuvering space in the bathroom, Ms. Kennedy's claims have been mooted by Mr. Alsheikh's remedial conduct. Ms. Kennedy testified that on her

13

visit to the gas station, the handicap parking space was faded, Trial Tran. at 11:4–10, and that the handicap-parking sign was faded and blocked from sight, *id.* at 12:12–18. *See* Pl.'s Ex. 3 & 4. Mr. Alsheikh testified that he moved the handicap parking space and that it now has an appropriate handicap parking sign. Trial Tran. 108:14–22; Pl.'s Ex. 44. Mr. Herrera confirmed that, when he visited, the handicap-parking sign had the correct wording, although he did not measure it to see if it was the correct height. *Id.* at 67:12–20.

Ms. Kennedy testified that there were obstructions in the access aisle next to the parking space, which would prevent her from using the handicap parking space. *Id.* at 11:4–13. When Mr. Herrera inspected the property on March 20, 2017, he too noted obstructions in the handicap parking space. *Id.* at 49:12–20. Mr. Alsheikh testified that he has removed any objects and has instituted a policy requiring his managers to remove anything from the spot if they see people place objects in it. *Id.* at 106:2–12.

Ms. Kennedy testified that the bathroom had a pedestal sink which prevented her from getting close enough to wash her hands, that the sink was too high, and that the sink had knobs which required a grip. *Id.* at 18:2–19:24; Pl.'s Exs. 13 &17. Mr. Alsheikh remedied these problems by removing the pedestal, moving the sink, Trial Tran. at 122:12–14; Def.'s Ex. 18, and replacing the faucet, Trial Tran. at 126:1–5. Ms. Kennedy testified that the toilet had its flush control next to the wall, rather than on the open side as required by the ADA. *Id.* at 19:13–15; Pl.'s Ex. 7. Mr. Alsheikh bought and installed a new toilet that has a flush control on the open side. Trial Tran. at 116:3–11; Def.'s Ex. 3. He also installed the toilet at the appropriate distance from the wall. Trial Tran. at 117:15–118:2; Def.'s Ex. 14. Ms. Kennedy testified that the toilet did not have a rear grab bar and the side grab bar was too short. Trial Tran. at 20:5–7; Pl.'s Ex. 18. Mr. Alsheikh installed a rear grab bar and a new side grab bar of the required length. Trial

Tran. at 124:8–20. Ms. Kennedy testified that the paper towel dispenser in the bathroom was too high for her to reach. Trial Tran. at 21:19–24; Pl.'s Ex. 16. Mr. Alsheikh installed a new paper towel dispenser at the appropriate height. Trial Tran. at 120:8–10; Def.'s Ex. 16 & 17. Ms. Kennedy testified that the bathroom door had a doorknob that required grip which she could not use. Trial Tran. at 20:13–21:1; Pl.'s Ex. 9. Mr. Alsheikh testified that he installed a new door handle. Trial Tran. at 125:21–24.

Mr. Herrera testified about a few additional ADA violations, which Mr. Alsheikh also testified he has remedied. Mr. Herrera testified that the handicap bathroom sign was mounted in the improper place—on the door instead of on the latch side—and at the incorrect height. *Id.* at 49:22–24. Mr. Alsheikh testified that he installed a new compliant handicap bathroom sign. *Id.* at 111:2–14; Def.'s Ex. 7, 8, 9, 10, 11. Mr. Herrera also testified that there was insufficient maneuvering clearance around the bathroom door. Trial Tran. at 50:3–12. Mr. Alsheikh remedied this problem by removing the latch from the door. *Id.* at 115:20–116:2.

Although the Court notes that Mr. Alsheikh owned the gas station for years without ensuring its compliance with the ADA and it was only after Ms. Kennedy's lawsuit and expert report that Mr. Alsheikh took any action to comply with the law, the Court concludes that these violations are moot because they cannot reasonably be expected to recur.

Removal of Barriers Where Readily Achievable

Ms. Kennedy failed to meet her burden of production with respect to whether remedying the limited maneuvering space in the bathroom was readily achievable. Mr. Herrera testified that he estimated it would cost $4,650 to remedy the lack of maneuvering space in the bathroom. *Id.* at 60:22–25. He stated that this estimate was not specific to the property but was an average based on other sites. *Id.* at 70:10–14. Mr. Herrera did not perform a readily achievable inspection

which would require analyzing the structure of the building, the plumbing, whether a wall is load bearing, and the effect that remedying the violations would have on the operation of the business. *Id.* at 70:25–71:25. Rather, his estimate was based on the assumption that the partition separating wall was a simple separating wall, rather than a wall that contained plumbing and electrical. *Id.* at 69:6–11. He did not conduct an analysis of the plumbing or electrical in the building. *Id.* at 69:17–18. Thus, Ms. Kennedy did not meet her burden to show that remedying this violation was readily achievable. *See Gathright-Dietrich*, 452 F.3d at 1274–5 (finding that plaintiffs failed to meet their burden where its proposed modifications "did not, in any meaningful way, address the engineering and structural concerns associated with their proposal").

### III. CONCLUSION

For all of the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that:

1. Plaintiff Patricia Kennedy is not entitled to judgment in her favor on her claim for violations of the ADA;

2. Final judgment will be entered in a separate order;

3. The Clerk of Court is directed to **CLOSE THIS CASE**.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 3rd day of January, 2018.

_____
Robin L. Rosenberg
United States District Judge

Copies furnished to all counsel of record.